IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :        CASE NO. 11-06130
                                                :
SERAPIO LAUREANO MOLINA;                        :
MIRIAM LOPEZ GOMEZ                              :        CHAPTER 13
                                                :
          Debtors                               :
                                                :
_____        :

OPINION AND ORDER

This case is before the court upon the amended objection to the Puerto Rico Treasury Department's (hereinafter referred to as "Treasury") proof of claim #11-1 filed by Serapio Laureano Molina and Miriam Lopez Gomez (hereinafter referred to as "Debtors) on April 23, 2012 alleging that the classification of the portion of the debt Treasury allocated as entitled to priority status pursuant to 11 U.S.C. §507(a)(8) is incorrect because Treasury is taking into consideration certain tax years (1995-2006) which should be classified as a general unsecured claim (Docket No. 39). Treasury filed its Reply to Debtors' Amended Objection to Claim No. 11 on June 5, 2012, stating that on May 2007, the Debtor signed an offer in compromise to pay the debt for the tax years 1994, 1995, 1996, 1997, 1999, 2000, 2001, 2002 and 2003, and thus the same are afforded priority status under 11 U.S.C.§507(a)(8)(A)(i-iii) (Docket No. 44). On July 16, 2012 the Debtors filed a Sur-Reply to Treasury's Reply to Amended Objection to Claim No. 11 arguing that the documents attached to Treasury's motion do not constitute an "offer in compromise" pursuant to 26 U.S.C. §7122 (Docket No. 50). On August 31, 2012, Treasury filed its Opposition to Debtors' Sur-Reply to Reply to Treasury's Reply to Debtors' Amended Objection to Claim No. 11 pleading that Debtor's payment plan by payroll deduction qualifies as an "offer in compromise" by virtue of Article 9(j) of the Puerto Rico Government Accounting Act, 3 L.P.R.A. §283h (Docket No. 57). For the reasons set forth below Debtor's amended objection to Treasury's proof of claim is granted.

Facts and Procedural Background

Serapio Laureano Molina and Miriam Lopez Gomez filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on July 19, 2011. On October 14, 2011, the Debtors' Chapter 13 plan was confirmed (Docket No. 20). On December 19, 2011 Treasury filed proof of claim No. 11-1 in the

amount of $56,735.72, of which $43,904.22 was listed as a priority claim under 11 U.S.C. §507(a)(8), and the remaining $12,831.50 was listed as a general unsecured claim. On December 29, 2011, the Debtors filed an Objection to Claim Number 11 arguing that the amounts claimed by Treasury exceed the amounts due and payable and that the amount owed as a priority claim amounts to $3,193.28 (Docket No. 22). On January 27, 2012, Treasury filed a motion requesting an extension of time of thirty (30) days to reply to Debtors' objection (Docket No. 28). On January 30, 2012, the court granted the extension of time requested by Treasury (Docket No. 30). On February 29, 2012, Treasury filed its Reply to Debtors' Objection to Claim No. 11 Filed by Treasury (Docket No. 32). On March 1, 2012, the Debtors filed a Motion for Leave to Reply requesting an extension of time to reply to Treasury's response to Debtors' objection to claim No. 11 (Docket No. 33).

On April 23, 2012, the Debtors filed an Amended Objection to Claim Number 11 by Treasury and Notice and Opportunity for Hearing alleging that the classification of the portion of the debt ($43,904.22) Treasury allocated as entitled to priority status pursuant to 11 U.S.C. §507(a)(8) is incorrect because Treasury is taking into consideration the tax years (1995-2006) which should be classified as a general unsecured claim. The Debtors admit that for the tax years 2007 through 2010 the amount that should be classified as a priority claim amounts to $3,180.78. The remainder of their tax liability for the tax years 1995 through 2006 is a general unsecured claim. (Docket No. 39). On May 21, 2012, Treasury filed a motion for an extension of time of thirty (30) days to reply to Debtors' amended objection (Docket No. 40). On May 22, 2012, the court granted Treasury's request for an extension of time of thirty (30) days to respond to Debtors' amended objection to claim (Docket No. 41). On June 5, 2012, Treasury filed its Reply to Debtors' Amended Objection to Claim No. 11 filed by Treasury alleging that on May 2007, the Debtor signed an offer in compromise to pay the debt for the tax years 1994, 1995, 1996, 1997, 1999, 2000, 2001, 2002 and 2003 and thus the same are afforded priority status under 11 U.S.C.§507(a)(8)(A)(i-iii) (Docket No. 44). On June 6, 2012, the Debtors filed a motion for an extension of time of thirty (30) days to answer Treasury's motion at Docket No. 44 (Docket No. 45).

On June 15, 2012, a status conference was held in which the court granted the parties 45 days to file dispositive motions. The court noted that the critical issue is if there was an offer of

compromise or not (Docket No. 46). On June 5, 2012, the Debtors filed a Sur-Reply to Treasury's Reply to Debtors' Amended Objection arguing that the documents attached to Treasury's motion do not constitute an "offer in compromise" pursuant to 26 U.S.C. §7122. An "offer in compromise" is an Internal Revenue Service (IRS) program under 26 U.S.C. §7122 which allows taxpayers with a tax debt to negotiate a settled amount that is less than the total amount owed (Docket No. 50). On August 7, 2012, Treasury filed an Urgent Motion to Clarify Order as to whether the parties must file dispositive positions in conformity with this court's bench Order of June 15, 2012 (Docket No. 46) and if not, if Treasury requested leave to file an opposition to Debtors' sur-reply (Docket No. 51). On August 10, 2012, the court granted Treasury's urgent motion and ordered Treasury to file an opposition to Debtors' sur-reply within 14 days (Docket No. 52). On August 24, 2012, Treasury file an Urgent Motion in Request for a Brief Extension of Time to File Opposition to Debtors' Sur-Reply requesting an additional five (5) days to submit its sur-reply (Docket No. 54). On August 27, 2012, the court granted Treasury's request for an additional extension of five (5) days to sur-reply (Docket No. 55).

On August 31, 2012 Treasury filed its Opposition to Debtors' Sur-Reply to Reply to Treasury's Reply to Debtors' Amended Objection to Claim 11 alleging that Debtor's payment plan by payroll deduction qualifies as an "offer in compromise" by virtue of Article 9(j) of the Puerto Rico Government Accounting Act, 3 L.P.R.A. §283h. The Puerto Rico Government Accounting Act authorizes the Secretary of the Puerto Rico Treasury Department to offer taxpayers, such as governmental employees, a partial payment plan to facilitate the payment of tax debts (Docket No. 57). On October 19, 2012, the Debtors filed a Request for Entry of Order for a Hearing to consider the Debtors' sur-reply and the claimant's opposition to the Debtors' sur-reply (Docket No. 58).

The issue before the court is whether an offer in compromise was in effect during the 240 day period prior to the filing of the bankruptcy petition pursuant to 11 U.S.C. §507(a)(8)(A)(ii). The court must determine whether Debtor's payment plan by payroll deduction pursuant to Article 9(j) of the Puerto Rico Government Accounting Act, 3 L.P.R.A. §283h(j) qualifies as an "offer in compromise" and if the same is in effect during the 240 day period prior to petition date to qualify as a priority under 11 U.S.C. §507(a)(8)(A)(ii).

Applicable Law and Analysis

*Income Tax Priority Claims Pursuant to Section 507(a)(8)(A)*

Section 1322(a)(2) provides that a Chapter 13 plan, "shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." 11 U.S.C. §1322(a)(2). Section 507(a)(8) provides in its pertinent part;

"[t]he following expenses and claims have priority in the following order:

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for–

(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition–

(i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition–

(ii) assessed within 240 days before the date of the filing of the petition, exclusive of–

(I) any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and

(II) any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case." 11 U.S.C. §507(a)(8)(A).

Income taxes pursuant to Section 507(a)(8)(A) will be afforded priority status based on the age of such tax liability. "The purpose of §523(a)(1) and §507(a)(8) is to render recent prepetition tax claims nondischargeable, but to allow the discharge of certain old or "stale" tax claims." Newman v. United States (In re Newman), 399 B.R. 541, 544-545 (Bankr. M.D. Fla. 2008) citing In re Shin, 306 B.R. 397, 409-10 (Bankr. D.D.C. 2004) (citing Young v. United States, 535 U.S. 43, 47, 122 S. Ct. 1036, 152 L. Ed. 2d 79 (2002)).

The two tests which are employed to determine whether a tax liability should be classified as an eight priority and is exempted from discharge pursuant to Section 523(a)(1)(A) are "the three year

rule" and the "240 day rule." See Alan N. Resnick & Henry J. Sommer, 11 Collier on Bankruptcy ¶TX4.02[1][d](16th ed. 2012). The "three year rule" provides that pre-petition income and gross receipt taxes will be given eighth priority if the same were due within three (3) years prior to the filing date of the bankruptcy petition, including any time extensions. Id. at ¶TX4.02[1][d][I]; 11 U.S.C. §507(a)(8)(A)(i). The "240 day rule" pursuant to Section 507(a)(8)(A)(ii) provides that income taxes and gross receipts assessed within 240 days prior to the date of the filing of the petition are entitled priority status and thus are nondischargeable tax liabilities. "The key date for purposes of section 507(a)(8)(A)(ii) is the date that the particular tax was assessed. It does not matter when the tax was incurred nor, as with section 507(a)(8)(A)(i), does it matter when the applicable return was due." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶507.11[2][b](16th ed. 2012). However, "[t]he 240 day assessment period is also suspended for any period during which (i) an offer in compromise is pending with the Internal Revenue Service and for 30 days thereafter or (ii) a waiver of the statute of limitations on assessment is in effect." Id. at ¶TX4.02[1][d][3]. An offer in compromise pursuant to 26 U.S.C. §7122(c) and (d)[1] is, "...an administrative proposal, evaluation,

---

[1] 26 U.S.C. §7122 provides in pertinent part;

"(c) Rules for submission of offers-in-compromise.

(1) Partial payment required with submission.

(A) Lump-sum offers.

(i) In general. The submission of any lump-sum offer-in-compromise shall be accompanied by the payment of 20 percent of the amount of such offer.

(ii) Lump-sum offer-in-compromise. For purposes of this section, the term 'lump-sum offer-in-compromise' means any offer of payments made in 5 or fewer installments.

(B) Periodic payment offers.

(i) In general. The submission of any periodic payment offer-in-compromise shall be accompanied by the payment of the amount of the first proposed installment.

(ii) Failure to make installment during pendency of offer. Any failure to make an installment (other than the first installment) due under such offer-in-compromise during the period such offer is being evaluated by the Secretary may be treated by the Secretary as a withdrawal of such offer-in-compromise.

(2) Rules of application.

(A) Use of payment. The application of any payment made under this subsection to the assessed tax or other amounts imposed under this title with respect to such tax may be specified by the taxpayer.

(B) Application of user fee. In the case of any assessed tax or other amounts imposed under this title with respect to such tax which is the subject of an offer-in-compromise to

5

and negotiation to determine if the IRS will accept a longer payment period, or a lesser amount than

which this subsection applies, such tax or other amounts shall be reduced by any user fee imposed under this title with respect to such offer-in-compromise.

(C) Waiver authority. The Secretary may issue regulations waiving any payment required under paragraph (1) in a manner consistent with the practices established in accordance with the requirements under subsection (d)(3).

(d) Standards for evaluation of offers.

(1) In general. The Secretary shall prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute.

(2) Allowances for basic living expenses.

(A) In general. In prescribing guidelines under paragraph (1), the Secretary shall develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses.

(B) Use of schedules. The guidelines shall provide that officers and employees of the Internal Revenue Service shall determine, on the basis of the facts and circumstances of each taxpayer, whether the use of the schedules published under subparagraph (A) is appropriate and shall not use the schedules to the extent such use would result in the taxpayer not having adequate means to provide for basic living expenses.

(3) Special rules relating to treatment of offers. The guidelines under paragraph (1) shall provide that–

(A) an officer or employee of the Internal Revenue Service shall not reject an offer-in-compromise from a low-income taxpayer solely on the basis of the amount of the offer,

(B) in the case of an offer-in-compromise which relates only to issues of liability of the taxpayer–

(i) such offer shall not be rejected solely because the Secretary is unable to locate the taxpayer's return or return information for verification of such liability; and

(ii) the taxpayer shall not be required to provide a financial statement, and

(C) any offer-in-compromise which does not meet the requirements of subparagraph (A)(i) or (B)(i), as the case may be, of subsection (c)(1) may be returned to the taxpayer as unprocessable." 26 U.S.C. §7122(c) and (d).

6

the full tax due." In re Paradis, 477 B.R. 295, 297 (Bankr. D. Me. 2012). Offers in compromise generally originate from taxpayers inability to pay or doubt as to a certain tax liability and arise when payments of assessed liabilities are requested, penalties for delinquent filings are asserted, and particular civil and criminal penalties are incurred by taxpayers. See 26 CFR §301.7122-1(b)[2] and 26 CFR §601.203(a)(2)[3]. Offers in compromise are required to be submitted on Form 656. See 26 CFR §301.7122-1(d)(1) and 26 CFR §601.203(b).

The court finds that the "three year rule" is inapplicable in the instant case because all of the income tax returns in controversy (for the tax years 1994, 1995, 1996, 1997, 1999, 2000, 2001, 2002 and 2003), even the most recent return for tax year 2003, were due seven (7) years prior to the filing of the bankruptcy petition. Therefore, the same are not entitled to a priority under 11 U.S.C. §507(a)(8)(A)(i).

This court also finds that the income tax returns for the tax years 1994, 1995, 1996, 1997, 1999, 2000, 2001, 2002, and 2003 must have been assessed prior to the date the alleged "offer in compromise" was signed by the joint debtor Serapio Laureano Molina on May 11, 2007. The court

---

[2] 26 CFR §301.7122-1 provides in pertinent part:
"(b) Grounds for compromise–(1) Doubt as to liability. Doubt as to liability exists where there is genuine dispute as to the existence or amount of the correct tax liability under the law. Doubt as to liability does not exist where the liability has been established by a final court decision or judgment concerning the existence or amount of the liability. See paragraph (f)(4) of this section for special rules applicable to rejection of offers in cases where the Internal Revenue Service (IRS) is unable to locate the taxpayer's return or return information to verify the liability.

(2) Doubt as to collectibility. Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability." 26 CFR §301.7122-1(b)(1) and (2).

[3] 26 CFR §601.203(a)(2) provides; "An offer in compromise of taxes, interest, delinquency penalties, or specific penalties may be based on either inability to pay or doubt as to liability. Offers in compromise arise usually when payments of assessed liabilities are demanded, penalties for delinquency in filing returns are asserted, or specific civil or criminal penalties are incurred by taxpayers. A criminal liability will not be compromised unless it involves only the regulatory provisions of the Internal Revenue Code and related statutes. However, if the violations involving the regulatory provisions are deliberate and with intent to defraud, the criminal liabilities will not be compromised." 26 CFR §601.203(a)(2).

notes that the alleged "offer in compromise" consists of a page titled, "Application for Wage Garnishment" ("Solicitud De Descuento En Sueldo") and the same includes a paragraph which makes reference to Article 9(j) of the Act Number 230, known as the "Puerto Rico Government Accounting Act." The court further notes that Treasury has also included as an Exhibit (Docket No. 44, Exhibit, pg. 1) a document from Treasury titled Notice of Debt or Authorization to Cancel or Amend Notice ("Notificacion De Deuda O Autorizacion Para Cancelar O Enmendar Una Notificacion") which provides the detail and breakdown of the entire income tax debt which amounts to $52,177.70. At the bottom of said document, there is a section titled Debt Authorization ("Amortizacion de la Deuda") that provides that this debt will be amortized in 36 equal installments of $100.00 each and the last installment will be in the amount of $48,577.70. It also provides that the installments will be deducted from the salary of the employee (joint debtor Serapio Laureano Molina), which corresponds to the month of August 2007 and consecutively. Therefore, the term of the installment payment plan lapsed on August 2010, which is almost a year (11 months) prior to the filing of the bankruptcy petition. Consequently, the alleged offer in compromise was not "in effect" during the 240 days prior to the bankruptcy filing in conformity with 11 U.S.C. §507(a)(8)(A)(ii)(I).

Having found that the alleged offer in compromise was not in effect 240 days prior to the petition date, it is not necessary for this court to delve into whether the application for wage garnishment pursuant to Article 9(j) of the Puerto Rico Government Accounting Act, 3 L.P.R.A. §283h(j) constitutes an "offer in compromise" similar in scope and purpose to the "offers in compromise" which are included in the Internal Revenue Code and Regulations since there was no offer in compromise in effect pursuant to 11 U.S.C. §507(a)(8)(A)(ii)(I). However, the court notes that Article 9(j)[4] of the Puerto Rico Government Accounting Act focuses specifically on a certain

---

[4] Article 9(j) of the Puerto Rico Government Accounting Act provides;
"[t]he Secretary, the paymasters appointed by the Secretary, the municipalities, the instrumentalities, the corporate entities and the legislative bodies may not make any payments to any natural or juridical person whatsoever having, on any account, overdue debts with the Commonwealth of Puerto Rico or any municipality. Whenever there are justified reasons, and the interests of the Commonwealth of Puerto Rico or the corresponding municipality are benefited, and the Secretary so approves, in those cases in which the debt is with the Commonwealth of Puerto Rico or with the mayor of the corresponding municipality, if the debt is with a municipality, the necessary payments

class of taxpayers; namely those taxpayers that have debts with government instrumentalities and that render services or supply materials or equipment to any governmental entity, given that governmental entities are prohibited to make payments to any natural or juridical person that has overdue debts with the Commonwealth of Puerto Rico or any municipality. The court also notes that it is aware that there are states that have offer in compromise programs designed for individuals and businesses that are insolvent or bankrupt and which may apply to the same through their Department of Taxation and Finance.

## Conclusion

For the reasons stated above, the court finds that the income taxes were not due within three years from the filing of the bankruptcy petition and that there was no offer in compromise "in effect" during the 240 days prior to the bankruptcy filing. Therefore, these taxes are not entitled to be classified as a priority pursuant to 11 U.S.C. §507(a)(8)(A)(ii)(I). Consequently, Debtor's amended objection to Treasury's proof of claim is hereby granted.

SO ORDERED.

In San Juan, Puerto Rico, this 31st day of January 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge

---

may be made to those persons who are in debt with the Commonwealth of Puerto Rico or with any municipality and who continue rendering services or supplying materials or equipment to the government, the municipalities, the instrumentalities, the corporate entities or the legislative bodies. The amounts withheld in compliance with this subsection shall be applied to the debt of the natural or juridical person from whom they are withheld. Provided, that if the natural or juridical person from whom an amount is to be withheld should be in debt with the Commonwealth of Puerto Rico and simultaneously with one or more municipalities, the debt to the Commonwealth of Puerto Rico shall be collected in the first place, and the others successively and strictly on the basis of their maturity dates, always collecting the earliest one first.

The Secretary is hereby authorized, in cases where the indebtedness is with the Commonwealth, and the mayor, where the indebtedness is with a municipality, to grant an installment payment plan that may facilitate the liquidation of the debt, if the economic condition of the debtor so warrants it." 3 L.P.R.A. §283h(j).